**UNITED STATES DISTRICT COUDRT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**ROBERT JUDGE,**
**Plaintiff**

**CIVIL ACTION: 6:25-cv-02054**

**VERSUS**

**JUDGE: DAVID C. JOSEPH**

**MAGISTRATE JUDGE: DAVID J. AYO**

**LAFAYETTE CONSOLIDATED GOVERNMENT and**
**ABRAHAM "AB" RUBIN, JR., in his individual capacity and as Lafayette Parish Councilman,**
**Defendants**

*****************************************************************************

***PLINTIFF'S FIRST AMENDED COMPLAINT***

*****************************************************************************

Plaintiff Robert Judge ("Plaintiff"), through undersigned counsel, files this First Amended Complaint against Lafayette Consolidated Government ("LCG") and Abraham "AB" Rubin, Jr. ("Rubin"), in his individual capacity, and alleges as follows:

I. NATURE OF THE ACTION

1. This civil-rights action arises from Rubin's alleged use of his authority and influence as an elected member of the Lafayette Parish Council to target Plaintiff, a former member of the Lafayette Library Board of Control, because of Plaintiff's sincerely held Catholic beliefs and his expression of those beliefs while performing his public duties.

2. Plaintiff alleges that Rubin engaged in a continuing and particularized effort to procure Plaintiff's removal from the Library Board, publicly admitted that he had long sought to remove Plaintiff, and later criticized the composition of the Library Board on the ground that it had been "stack[ed]" with "religious people."

3. Plaintiff does not seek to impose liability on Rubin for voting on legislation, introducing an ordinance, debating proposed legislation, or formulating a policy of general application. Plaintiff's claims against Rubin concern allegedly administrative, retaliatory, and particularized conduct directed toward Plaintiff outside the legitimate legislative process.

4. Plaintiff asserts claims under 42 U.S.C. § 1983 for infringement of his rights under the First and Fourteenth Amendments, a municipal-liability claim against LCG, and related claims under Louisiana law.

5. Plaintiff does not assert any claim under Title VII of the Civil Rights Act of 1964 or any employment-based hostile-work-environment claim.

6. Plaintiff names Rubin only in his individual capacity and does not assert a separate official-capacity claim against him.

## II. PARTIES

7. Plaintiff Robert Judge is a resident of Lafayette Parish, Louisiana.

8. Plaintiff was appointed to the Lafayette Library Board of Control in or about February 2021 and thereafter served as a member of that public body.

9. Plaintiff is Catholic and holds sincere religious beliefs that informed his views and expression while serving on the Library Board.

10. Defendant Abraham "AB" Rubin, Jr. is a resident of Lafayette Parish, Louisiana and has served as an elected member of the Lafayette Parish Council since 2020.

11. At all relevant times, Rubin acted under color of state law by invoking, exercising, or purporting to exercise authority and influence available to him because of his elected office.

12. Defendant Lafayette Consolidated Government is a municipality and political subdivision of the State of Louisiana capable of suing and being sued. LCG includes the Lafayette Parish Council, on which Rubin served.

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's Louisiana-law claims because they arise from the same alleged course of conduct as his federal claims.

15. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b) because the Defendants reside in this District and the events giving rise to Plaintiff's claims occurred in Lafayette Parish, Louisiana.

## IV. FACTUAL ALLEGATIONS

16. In or about February 2021, Plaintiff was appointed to the Lafayette Library Board of Control.

17. The Lafayette Parish Council exercises governmental authority concerning appointments to the Library Board.

18. Plaintiff's Catholic faith was known to Rubin and other relevant LCG officials because, among other things, Plaintiff was the subject of an inflammatory and biased article in The Advocate regarding his opposition to drag queen story time at the time of his appointment to the library board, and during his tenure on the board, he actively opposed the placing of highly questionable books in the children's section of the library.

19. While serving on the Library Board, Plaintiff engaged in constitutionally protected religious expression by voting against and vocally proclaiming his opposition to the placing of highly questionable books in the children's section of the library.

20. Rubin knew of that protected activity because he made statements to the media and at library board meetings.

21. By his own admission, beginning in or about February 2021, Rubin sought to have Plaintiff removed from the Library Board specifically because of his religious beliefs.

22. Those efforts were directed specifically toward Plaintiff and did not involve the passage or rejection of legislation or the formulation of a policy applicable to the public generally.

23. In or about August 2023, Rubin publicly called for Plaintiff's resignation from the Library Board.

24. Rubin made that demand while identifying himself with, and invoking the influence of, his elected position as a Parish Council member.

25. On February 17, 2025, Rubin attended a public meeting of the Lafayette Library Board and criticized Plaintiff concerning the proposed Northeast Regional Library project.

26. During that meeting, Rubin stated to Plaintiff, in substance, that he had been trying to remove Plaintiff from the Board "for the longest" and compared Plaintiff to "a cancer that keeps spreading."

27. Rubin's statement that he had long been trying to remove Plaintiff was consistent with his alleged efforts beginning after Plaintiff's appointment.

28. Plaintiff responded at the meeting by addressing the status of the Northeast Regional Library project and the work performed in connection with that project.

29. On October 21, 2025, during a Lafayette Parish Council meeting, Rubin stated: "Ever since we've been stacking the board with religious people, we haven't had one award for our award-winning library prior to this, not a one. That just speaks to, speaks volumes about who we are putting on the library board."

30. Rubin's October 21, 2025 statement expressly identified the religious character of Library Board members as a reason for criticizing the Board's composition and performance.

31. In context, Plaintiff understood Rubin's reference to "religious people" to include Plaintiff.

32. Rubin's February and October 2025 statements were not isolated from his prior conduct. Plaintiff alleges that they publicly disclosed Rubin's longstanding objective to remove Plaintiff and Rubin's hostility toward the presence and expression of religious viewpoints on the Library Board.

33. Rubin allegedly used the visibility, access, and influence accompanying his elected office to pressure Plaintiff to leave the Library Board and to encourage other governmental decisionmakers to remove or decline to reappoint him.

34. Rubin could not have exercised the same authority or influence over the composition of the Library Board as a private citizen because his efforts depended on his position as an elected member of the governmental body involved in Library Board appointments.

35. Rubin's conduct adversely affected Plaintiff by pressuring him to resign when

he would not otherwise have resigned, continuing to serve his community in a public capacity as well as severe emotional distress and suffering.

36. Plaintiff resigned from the Library Board after Rubin's October 21, 2025 statement.

37. Plaintiff alleges that Rubin's sustained campaign and use of governmental influence were a substantial or motivating factor in Plaintiff's resignation.

V. MUNICIPAL CONDUCT

38. The Lafayette Parish Council possesses governmental authority concerning the appointment, removal or reappointment of library board members.

39. Rubin is one member of the Lafayette Parish Council. Plaintiff does not allege that Rubin's statements became municipal policy merely because Rubin held elected office.

40. Plaintiff instead alleges that LCG became responsible for the constitutional deprivation through not taking appropriate action against Rubin even though by his own admission, he had been trying to get rid of Plaintiff and very likely conferred with other members of LCG and/or Parish Council, and thus acquiescing in Rubin's actions.

41. It is alleged that the relevant final policymaker knew of Rubin's religiously charged effort to remove Plaintiff because Rubin was very vocal about his animus towards Plaintiff and religious members of the Board.

42. With that knowledge, the final policymaker affirmatively approved Rubin's objective or adopted his conduct by failing to take action against and/or censuring Rubin for his comments and actions.

43. That municipal decision directly caused Plaintiff to suffer the constitutional

injury alleged in this First Amended Complaint because Plaintiff resigned out of pressure and sheer exhaustion from the constant attacks on his religious beliefs and convictions.

V. INJURIES

44. As a direct and proximate result of Defendants' conduct, Plaintiff alleges that he lost the opportunity to continue serving on the Library Board and suffered reputational injury, humiliation, emotional distress, and other compensable damages.

45. Plaintiff experienced severe emotional distress consisting of severe anxiety, depression, marital strain as well as loss of sleep.

COUNT ONE

42 U.S.C. § 1983—FIRST AMENDMENT FREE EXERCISE

Against Rubin in His Individual Capacity

46. Plaintiff incorporates Paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff held and expressed sincere religious beliefs while serving on the Library Board.

48. Rubin knew of Plaintiff's religious beliefs and expression.

49. Acting under color of state law, Rubin intentionally targeted Plaintiff for adverse treatment because of Plaintiff's religious beliefs and religious expression.

50. The adverse treatment included Rubin's alleged use of governmental authority and influence to procure Plaintiff's removal, threaten Plaintiff's continued public service, and pressure Plaintiff to resign.

51. Rubin's conduct was directed specifically at Plaintiff and was not the enactment

of legislation or a policy of general application.

52. Rubin's conduct substantially burdened Plaintiff's exercise and expression of his religious beliefs by forcing a resignation.

53. Rubin's conduct was intentional, malicious, or undertaken with reckless or callous indifference to Plaintiff's federally protected rights.

54. Rubin's conduct directly and proximately caused Plaintiff's injuries.

COUNT TWO

42 U.S.C. § 1983—FIRST AMENDMENT RETALIATION

Against Rubin in His Individual Capacity

55. Plaintiff incorporates Paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiff engaged in the protected religious expression identified in Paragraph 19.

57. Rubin knew that Plaintiff had engaged in that protected expression.

58. Rubin subjected Plaintiff to adverse action by urging his resignation at Council meetings and showing up to library board meeting to intimated Plaintiff.

59. Rubin's adverse action would deter a person of ordinary firmness from continuing the protected expression.

60. Plaintiff's protected expression was a substantial or motivating factor in Rubin's conduct, as shown by Rubin's statements concerning "religious people" and the timing of his conduct.

61. Rubin's conduct was particularized, administrative, and retaliatory rather than legislative.

62. Rubin's conduct was intentional, malicious, or undertaken with reckless or callous indifference to Plaintiff's federally protected rights.

63. Rubin's conduct directly and proximately caused Plaintiff's injuries.

COUNT THREE

42 U.S.C. § 1983—MUNICIPAL LIABILITY

Against LCG

64. Plaintiff incorporates Paragraphs 1 through 63 as if fully set forth herein.
65. Plaintiff suffered a deprivation of his First Amendment rights as alleged above.
66. The official or governmental body identified in Paragraph 38 possessed final policymaking authority in the relevant area.
67. That final policymaker made or affirmatively adopted the municipal decision identified in Paragraph 42.
68. The municipal decision was taken with knowledge that Plaintiff was being targeted because of his religious beliefs or protected expression.
69. The municipal decision not to act to protect Plaintiff was the moving force behind Plaintiff's constitutional injury.
70. LCG is therefore liable under 42 U.S.C. § 1983 for the constitutional injury caused by its own official decision.

COUNT FOUR

DEFAMATION UNDER LOUISIANA LAW

Against Rubin

71. Plaintiff incorporates Paragraphs 1 through 70 as if fully set forth herein.
72. On February 17, 2025, The Lafayette Library Board of Control conducted a scheduled meeting. During that meeting the Board decided to postpone a vote on the exact nature of the size and structure of the proposed Northeast Regional Library. This was due to the massive amount of information and data to be

considered and only three business days within which that information was received prior to the meeting. After having concluded the meeting, Lafayette Parish Councilman AB Rubin notified others of the general public that he was "on the way to address the Board." After a three-hour meeting, The Board members, out of deference to Mr. Rubin, and his position as a Lafayette Parish Councilman, remained until his arrival. Upon arrival, Defendant, Councilman AB Rubin, entered the meeting, approached the podium, specifically addressed Plaintiff, Robert Judge, and said, "**You are a cancer, and I have been trying to get rid of you since day one.**"

73. On October 21, 2025, Mr. Rubin clarified his remarks of February 17, 2025 when, as reported by News 15 of Lafayette he stated, "**Ever since we've been stacking the board with religious people, we haven't had one award for our award-winning library prior to this, not a one. That just speaks to, speaks volumes about who we are putting on the library board.**"

74. The statements were false and baseless, and Rubin knew the statements had no basis in fact.

75. The statement was defamatory because it accused or implied that Plaintiff was unfit for his position on the library board due to his religious convictions and that because of those convictions, Plaintiff had somehow caused harm to the library.

76. Rubin knew the statements were false or acted with reckless disregard for their truth because he had no proof and still has no proof of any facts that would support his assertions.

77. Rubin's publication of the statements caused Plaintiff to suffer reputational

harm and damages, including persecution by certain members of the public.

78. Plaintiff does not base this count solely on Rubin's use of the metaphor "cancer" or on an expression of opinion unaccompanied by a provably false factual assertion.

COUNT FIVE

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER LOUISIANA LAW

Against Rubin

79. Plaintiff incorporates Paragraphs 1 through 78 as if fully set forth herein.

80. Rubin, by his own admission, engaged in a sustained course of conduct allegedly designed to use governmental power, public humiliation, and religious targeting to force Plaintiff from public service.

81. Rubin knew that Plaintiff was under persecution by members of the public for his religious beliefs as they constantly showed up at library board meeting to harass and harangue Plaintiff, and despite knowing this, Rubin engaged in the same conduct.

82. Considering Rubin's alleged abuse of governmental authority, the duration of his conduct, and his knowledge of Plaintiff's vulnerability to emotional harm, Rubin's conduct was extreme and outrageous.

83. Rubin intended to cause Plaintiff severe emotional distress or knew that severe emotional distress was certain or substantially certain to result.

84. Plaintiff suffered the severe emotional distress described in Paragraphs 44 and 45.

85. Rubin's conduct directly and proximately caused that distress.

VIII. DAMAGES AND RELIEF REQUESTED

86. Plaintiff seeks compensatory damages against Rubin and LCG for the injuries caused by their respective unlawful conduct.

87. Plaintiff seeks punitive damages under 42 U.S.C. § 1983 only against Rubin in his individual capacity based on his allegedly malicious conduct or reckless or callous indifference to Plaintiff's federally protected rights.

88. Plaintiff does not seek punitive damages against LCG or punitive damages under Louisiana law.

89. Plaintiff requests reasonable attorneys' fees and costs under 42 U.S.C. § 1988 as relief associated with his § 1983 claims. Plaintiff does not assert attorneys' fees as an independent cause of action.

90. Plaintiff requests pre-judgment and post-judgment interest as allowed by law.

91. Plaintiff demands trial by jury on all issues triable by jury.

IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Judge respectfully requests judgment in his favor and against Defendants, as applicable, awarding:

92. Compensatory damages in an amount to be determined at trial;

93. Punitive damages against Rubin in his individual capacity under 42 U.S.C. § 1983;

94. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

95. Pre-judgment and post-judgment interest as allowed by law; and

96. All other relief to which Plaintiff may be entitled.

Respectfully submitted:

WELBORN & HARGETT, LLC

BY: */s/ G. Shelly Maturin, II*
JASON M. WELBORN (#26548)
JACOB H. HARGETT (#32490)
G. SHELLY MATURIN, II (#26994)
MATTHEW J. GAAR (#41253)
1031 Camellia Blvd
Lafayette, LA 70508
Telephone: (337) 234-5533
Facsimile: (337) 769-3173
jason@wandhlawfirm.com
jacob@wandhlawfirm.com
shelly@wandhlawfirm.com
matthew@wandhlawfirm.com
Attorneys for Plaintiff, Robert Judge

**CERTIFICATE OF SERVICE**

This is to certify that on the 21st day of October, 2026, a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record

*/s/ G. Shelly Maturin, II*

G. SHELLY MATURIN, II